## UNITED STATES ex rel. FONG LUNG SING. v. DAY, Commissioner of Immigration, et al.

District Court, S. D. New York. August 3, 1928.

M. Michael Edelstein, of New York City, for relator.

Charles H. Tuttle, U. S. Atty., of New York City (Edward Feldman, Asst. U. S. Atty., of New York City, of counsel), for respondents.

HAZEL, District Judge. The record discloses that a Chinese lad, Fong Bing Sing, about 18 years old, arrived in the United States about April 12, 1928, claiming the right of admission as a son of a Chinese father, Fong Lung Sing, a native-born citizen residing in the United States. After a hearing, the Board of Inquiry excluded him, mainly on the ground of discrepancies in the testimony of the father as to birth of relator, and testimony of another son as to the character and description of the village at the home in China. It appears that the father, concededly a native of this country, visited China prior to 1902, returning in May, 1902, and in 1908 he again visited China, returning in 1911. He was married to Gee Shee, by whom, on his examination at time of arrival, he claimed to have had a boy named Fong Teung. In 1917 a Chinese boy, Fong Bing Thin, applied for entry, claiming to be his son. At the hearing the father testified that he had four sons, to wit, Fong Bing Thin, born April 3, 1902, Fong Bing Chung, born December 3, 1903, Qwong Bing, born January 22, 1910, and the relator herein, Fong Bing Sing, then 7 years old. Thin testified that he had three brothers remaining in China. Although the board was somewhat doubtful of Thin's parentage, he was nevertheless admitted, the board at the same time expressing the opinion that the father was endeavoring to establish a fraudulent status for later on obtaining the entry of other sons, including the relator.

In 1921, Fong Bing Chung arrived at Boston, claiming to be the son of Fong Lung Sing. He, too, testified that he had three

brothers, including Thin, who had been previously admitted, and two in China, and that his brother Fong Bing Sing, the relator in this proceeding, intended to come to this country. The father, on the examination of Chung, again stated that he had four sons, and described the village as consisting of somewhat more than 10 houses located at the head of the village and comprising approximately 4 rows. Chung said there were 11 rows in the village, and the father later explained, in the course of the examination, that a few more rows may have been added since he had left China. Fong Bing Thin, who had been admitted as already indicated, testified that there were 20 rows of 20 houses. These discrepancies were strongly emphasized by the board, when reaching its decision that the relator was not entitled to enter, and also were stressed in the rejection of Chung.

On the hearing accorded the relator herein, the father and Thin again testified that there were four sons in all, and they were again interrogated as to the size of the village, and other matters, to test their veracity. It was the view of the board that the discrepancies in relation to the size of the village, and a few other details not necessary to mention, fully justified the conclusion that the alleged father and Thin, together with the relator, had agreed upon their answers to anticipated questions. Their contradictory statements, however, in describing the village, it seems to me, do not bear out this criticism. When the father was examined in 1911, on his arrival from China, where he resided with his wife for 3 years, he swore that he had one son, while his testimony at the Thin hearing was that he had the four sons heretofore mentioned. In this he was corroborated by Thin and subsequently by Chung.

It is also contended that, inasmuch as Fong Lung Sing concededly was in the United States from May, 1902, until May, 1908, the probability of Chung, born in 1903, being his son, was extremely remote. He explained, however, at the Chung hearing, that he was not positive of the month of Chung's birth. Chung, however, was not admitted.
█ The discrepancies at the prior hearings and the hearing with which we are dealing are not so serious, in my opinion, that they may not be fairly explained, and open the door for uncertainty of the conclusions reached by the board. The difference in number of houses in a row, and especially dates of birth of children, are incidents that often escape the memory of fathers, and honest mistakes in relation thereto are not infrequent. The questionings of the father and Chung at the latter's hearing, as the report of the board which is in the record submitted herein shows, and the examination of the relator, Thin, and his father in this proceeding, were of a rigid character, apart from each other, and involved many questions as to details, relationships, description of home, and time of births.

The case is not widely different, as to the facts, from U. S. ex rel. Leong Ding v. Brough, 22 F.(2d) 926, wherein the Circuit Court of Appeals ruled that the discrepancies in the evidence were not sufficiently important to warrant exclusion of a son. Of course, the father's testimony in 1911, indicating that he had but one son, when he apparently had two or three, Fong Bing Sing being born after his departure from China, is not beyond suspicion, but it is not incredible that his first examination lacked thoroughness, or, as he claims, there may have been a mistake in understanding.

If Fong Bing Sing is the son of Fong Lung Sing, admission should not be denied him, since children of citizens born out of the limits of the United States are in fact citizens of the United States (section 1993, R. S. [8 USCA § 6]), and this provision applies to all races, regardless of their place of birth. It is true the burden rested upon the applicant to establish that he was the son of a native-born citizen, but on the evidence submitted I am unconvinced that the government's contention of its fabrication is substantial. In my view, the discrepancies and contradictions at prior hearings were insufficient reason for rejection of the evidence given to support the assertion of the relator that he was the son of Fong Lung Sing. As stated in Go Lun v. Nagle, 22 F. (2d) 246, by the Circuit Court of Appeals, Ninth Circuit:

"We may say at the outstart that discrepancies in testimony, even as to collateral and immaterial matters, may be such as to raise a doubt as to the credibility of the witnesses and warrant exclusion; but this cannot be said of every discrepancy that may arise. We do not all observe the same things, or recall them in the same way, and an American citizen cannot be excluded, or denied the right of entry, because of immaterial and unimportant discrepancies in testimony covering a multitude of subjects. The purpose of the hearing is to inquire into the citizenship of the applicant, not to develop discrepancies which may support an order of exclusion, regardless of the question of citizenship."

And see Johnson v. Damon (C. C. A.) 16 F.(2d) 65.

██ It may be true that false testimony was given by the father at the former hearings in his efforts to obtain the entry of Chung and Thin, but, assuming such to have been the fact, it would not justify exclusion in this instance if there is some evidence to satisfy a reasonable man that the relator, claiming rights of American citizenship through the nativity of his father, was entitled thereto. See Ex parte Ng Bin Fong (D. C.) 20 F.(2d) 1014.

It follows, from the foregoing, that a fair hearing was not accorded the relator by the Board of Special Inquiry, and the writ of habeas corpus must be sustained.